11-818-cv
Pearce v. LaBella

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 22nd day of March, two thousand twelve.

PRESENT:  JOHN M. WALKER, JR.,
          GERARD E. LYNCH,
          CHRISTOPHER F. DRONEY,
                    *Circuit Judges.*

_____

GINA M. PEARCE, as Guardian of distributees of Kristin Mary Palumbo Longo (deceased) and Administratix of the Estate of Kristin Mary Palumbo Longo (deceased), STEVEN L. PEARCE, as Guardian of distributees of Kistin Mary Palumbo Longo (deceased), JOSEPH LONGO, as a distributee of Kristin Mary Palumbo Longo (deceased),
                    *Appellee*,

                    v.                                          No. 11-818-cv

DANIEL LABELLA, Ind. and as a member of the City of Utica Police Department, and as Commissioner of Public Safety, DAVID R. ROEFARO, individually and as Mayor of the City of Utica,
                    *Defendants-Appellants*,

ESTATE OF OFFICER JOSEPH A. LONGO, JR., Ind. and as a former member of the City of Utica Police Department, CITY OF UTICA, CITY OF UTICA POLICE DEPARTMENT, JANE/JOHN DOE,
                    *Defendants.*

_____

FOR APPELLANTS:       JOHN P. ORILIO, Assistant Corporation Counsel, City of Utica Law Department, Utica, New York.

FOR APPELLEE:       JOHN W. DILLON, New Hartford, New York.

Appeal from the United States District Court for the Northern District of New York (David N. Hurd, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED in part and REVERSED in part.

Defendants-appellants Daniel LaBella and David R. Roefaro appeal from the district court's denial of their Rule 12(b)(6) motions to dismiss.  See Pearce v. Estate of Longo, 766 F. Supp. 2d 367 (N.D.N.Y. 2011).  We assume the parties' familiarity with the underlying facts and procedural history of the case.

The plaintiffs are representatives of the estate of Kristin Longo, who was murdered by her husband, Joseph Longo, a Utica, New York, police officer, who killed himself after the murder.  LaBella was the chief of police in Utica at the time; Roefaro was the mayor.  On appeal, LaBella and Roefaro argue that they are entitled to qualified immunity from the plaintiffs' 42 U.S.C. § 1983 substantive due process claims, brought under the "state created danger" theory.  See, e.g., Pena v. DePrisco, 432 F.3d 98, 107-12 (2d Cir. 2005).

"When, as here, the district court resolves a qualified immunity issue on a motion to dismiss, we review the court's determination de novo, accept as true all the material allegations of the complaint, and draw all reasonable inferences in the plaintiff's favor." Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003).

2

The district court concluded that the plaintiffs had sufficiently stated a "state created danger" claim, see Pearce, 766 F. Supp. 2d at 375, and that neither LaBella nor Roefaro was entitled to qualified immunity. The court held that the "plaintiffs' amended complaint sufficiently alleges that [LaBella and Roefaro] implicitly communicated to Longo that his abusive and threatening behavior would go unpunished and unimpeded. This conduct created, or at the very least increased, the danger to Kristin and violated a constitutional right that was clearly established at the time." Id. at 377.

The district court was correct with respect to LaBella but incorrect with respect to Roefaro.

As to LaBella, the amended complaint alleged, inter alia, that (1) he was unqualified for the job of police chief and had obtained the position "wrongfully and surreptitiously," see Am. Compl. ¶¶ 10-13; (2) he and Joseph Longo "had been close friends for several years" prior to LaBella's appointment as chief "and had been partners for many years" in the Utica Police Department, id. ¶ 14; (3) after word of Joseph Longo's domestic violence began to spread throughout the police department, another officer "urged" LaBella "to take action, including but not limited to confiscating" Joseph Longo's weapons, but LaBella "denied these requests, and directly ordered" that Officer Longo "be allowed to keep his weapons, and remain on duty without psychiatric and/or mental health intervention, notwithstanding the representations [by a Utica police official] to [Kristin Longo] that his weapons would be confiscated and that all measures would be taken to protect" Kristin Longo "and her children," id. ¶ 26; (4) the Utica Police Department "had a policy, custom and practice," either established or approved by LaBella, "of turning a blind eye to incidents of police

3

officers involved in domestic violence," "discourag[ing] victims from reporting abusive behavior on the part of police officers," and telling "lie[s] to victims so as to protect officers," id. ¶¶ 47, 70; and (5) LaBella and the police department "failed to properly supervise" or train officers, including "in the legal limits regarding use of force," id. ¶ 69.

At least at the pleading stage, these allegations suffice to defeat LaBella's claim of qualified immunity. They sufficiently state a claim under the "state created danger" doctrine because these facts, if true, would permit a jury to conclude that LaBella "communicate[d] to a private person" – Joseph Longo – "that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others." See Pena, 432 F.3d at 111. As this conclusion is based on caselaw that was well established at the time of LaBella's actions in 2009, qualified immunity would not apply if the allegations are successfully proven. See id. at 110-12; Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 429-34 (2d Cir. 2009). The district court was therefore correct to reject LaBella's motion to dismiss.

However, the allegations against Roefaro as mayor are plainly insufficient to establish liability or defeat qualified immunity. As to Roefaro, the amended complaint alleged merely that (1) he appointed his friend LaBella as police chief, even though LaBella was not qualified for the job and other applicants had achieved equal or higher scores on the qualifying civil-service exam, Am. Compl. ¶¶ 10-12; (2) Roefaro hired LaBella as police chief despite knowing that LaBella "lacked the requisite education, qualifications, and experience to serve competently" as chief," id. ¶ 13; (3) LaBella's appointment constituted

4

a "wrongful and illegal conspiracy" between Roefaro, LaBella, and other unspecified members of the Utica city government, carried out "with reckless disregard," that "created a danger to" Kristin Longo because it made her "vulnerable to the dangers posed by" her husband, id. ¶¶ 42, 44, 45; and (4) Kristin Longo's "great pain and suffering," "apprehension of death," and death were all "foreseeable consequences of the appointment of an unqualified individual to act as chief of police," id. ¶ 50.

These allegations do not allege a violation of any "clearly established" constitutional or statutory right. Plaintiffs do not allege that Roefaro knew or should have known about Joseph Longo's violent behavior, or knew or should have known that LaBella, as police chief, would ignore such behavior, or refused to take appropriate steps once he learned (if he ever did) of Joseph Longo's domestic violence or of LaBella's inaction. Rather, the only reasonably specific allegations against the mayor are that he knowingly hired an unqualified police chief, and that at some later point the unqualified chief failed to prevent a subordinate from murdering his wife.

These allegations do not come close to clearing the two hurdles required to overcome qualified immunity: establishing that (1) the mayor's "conduct violated a constitutional right," Saucier v. Katz, 533 U.S. 194, 201 (2001); and (2) that the right was "clearly established" – that is, that it "would be clear to a reasonable [mayor] that his conduct" in hiring an unqualified friend as police chief "was unlawful," see id. at 202.

As to the first prong of the test, the plaintiffs have not alleged that Roefaro "created a serious danger by acting with deliberate indifference to it." See Pena, 432 F.3d at 114.

5

Indeed, the complaint does not contain any non-conclusory allegations that the mayor knew or should have known of the danger that Joseph Longo posed to Kristin Longo, or knew or should have known that LaBella would be ill-equipped to supervise an officer like Joseph Longo. Instead, the complaint alleges merely that the mayor knew that LaBella "lacked the requisite education, qualifications, and experience to serve competently as Chief of Police for a paramilitary organization the size of the Utica Police Department." Am. Compl. ¶ 13.

Furthermore, even if the complaint *had* properly made out an allegation of a substantive due process violation, the mayor would nonetheless be entitled to qualified immunity under the second prong of the qualified immunity test, because the purported mayoral "duty" asserted by the plaintiffs – a duty to prevent officers like Joseph Longo from committing domestic violence by assuring that the candidate most qualified to prevent such is hired as police chief – cannot be said to have been a "clearly established" one. See Anderson, 317 F.3d at 197. Elected executives on occasion appoint cronies of questionable qualification to important government positions, and such appointments have not been held to implicate the Fifth or Fourteenth Amendments to the U.S. Constitution. Indeed, we know of no case, in our circuit or any other, that contemplates the existence of a duty like the one that the plaintiffs assert here. Such a duty certainly was not "clearly established" when Roefaro hired LaBella as police chief or when Joseph Longo killed his wife.

In addition to the allegations listed above, the amended complaint contains several conclusory allegations against "the defendants" collectively that do not distinguish between the individual defendants. For example, the plaintiffs allege:

6

> The defendants had a policy, custom and practice of turning a blind eye to incidents of police officers involved in domestic violence. Upon information and belief, supervisors often discouraged victims from reporting abusive behavior on the part of police officers and/or lied to victims so as to protect police officers. . . . This policy, custom and practice amounted to either express or implicit consent to police officers to continue to engage in domestic violence.

Am. Compl. ¶ 47. The qualified immunity doctrine certainly does not permit government officials to turn a blind eye to or encourage such conduct. See, e.g., Okin, 577 F.3d at 434 (concluding that "the state-created danger theory, at the time of defendants' actions here, clearly established that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply"). But in the present case, the plaintiffs' broad and conclusory allegations against "the defendants" as a group do not suffice to overcome Roefaro's individual qualified immunity.

Accordingly, Roefaro was entitled to qualified immunity, and the district court should have granted his Rule 12(b)(6) motion.

For the foregoing reasons, the judgment is AFFIRMED with respect to LaBella but REVERSED with respect to Roefaro. The case is remanded with directions to enter judgment for Roefaro.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

7