Edwin BANKS; Mary Banks; Angel
Dublin; and Tawanda Starkey,
Plaintiffs,

v.

Anthony ANNUCCI, Acting Commissioner of DOCCS; D. Rock, Superintendent, Upstate Correctional Facility; Thomas Beilein, Chairman, State Commission of Correction; Sgt. Eddy, Corrections Sergeant, Upstate Correctional Facility; Sgt. Gilmore, Corrections Sergeant, Upstate Correctional Facility; E. Marshall, Correction Officer, Upstate Correctional Facility; M. Sevey, Correction Officer, Upstate Correctional Facility; B. Page, Correction Officer, Upstate Correctional Facility; Hide, Correction Officer, Upstate Correctional Facility; Fairchild, Nurse, Upstate Correctional Facility; Lordi, Nurse, Upstate Correctional Facility; Vijay Kuma Madalaywama, Doctor, Upstate Correctional Facility; Marinelli, Psychiatrist, Office of Mental Health, Upstate Correctional Facility; S. Woodward, Supervisor, Inmate Grievance Program, Upstate Correctional Facility; Karen Bellamy, Director, Inmate Grievance Program, DOCCS; Carl Koenigsmann, Chief Medical Officer, DOCCS; Pickering, Offender Rehabilitation Coordinator, Upstate Correctional Facility; Vern Fonda, Inspector General, DOCCS; John Doe 1, Unidentified Union of the Officers at Upstate Correctional Facility; John Doe 2, Unidentified employer/agent for the medical staff at Upstate Correctional Facility; John Doe 3, Unidentified Deputy Superintendent of Security, Upstate Correctional Facility; and John Doe 4, Unidentified Corrections Officer with the rank of Lieutenant at Upstate Correctional Facility, Defendants.

No. 9:13–CV–1500 (DNH/ATB).

United States District Court,
N.D. New York.

Signed Sept. 30, 2014.

396

399

Edwin Banks, Clinton Correctional Facility, Dannemora, NY, Plaintiff, pro se.

Mary Banks, Plaintiff, pro se.

Angel Dublin, Plaintiff, pro se.

Tawanda Starkey, Plaintiff, pro se.

**DECISION AND ORDER**

DAVID N. HURD, District Judge.

## I. INTRODUCTION

The Clerk has sent for review a civil rights complaint filed by pro se plaintiffs Edwin Banks, Mary Banks, Angel Dublin, and Tawanda Stark pursuant to 42 U.S.C. § 1983 ("Section 1983"). Dkt. No. 1 ("Compl."). None of the plaintiffs paid the filing fee required for this action. Plaintiff Edwin Banks, who is currently incarcerated at Upstate Correctional Facility ("Upstate C.F."), has submitted an application to proceed in forma pauperis, Dkt. No. 18 ("IFP Application"), and motions requesting appointment of counsel (Dkt. Nos. 3, 16), preliminary injunctive relief (Dkt. Nos. 4, 35), and an investigation into plaintiff's conditions of confinement (Dkt. No. 38).

## II. Plaintiffs Mary Banks, Angel Dublin, and Tawanda Stark

Mary Banks is identified as the mother of Edwin Banks; Angel Dublin is Edwin Banks' sister; and Tawanda Starkey is identified as a friend of Edwin Banks. Compl. at 2. Mary Banks, Angel Dublin, and Tawanda Starkey (1) have not paid the statutory filing fee of $400.00 required for this action, nor have any of them submitted an IFP Application on their own behalf; and (2) none of the three women have signed the complaint.[1]

---

1. Additionally, it is found that none of these three women allege any sort of constitutional claim. Construed liberally, as best as can be determined, Mary Banks, Angel Dublin, and Tawanda Starkey were added to the complaint in an attempt to allege that their rela-

Accordingly, Mary Banks, Angel Dublin, and Tawanda Starkey will be dismissed as plaintiffs to this action and this action is considered brought only on behalf of plaintiff Edwin Banks.

### III. Plaintiff Edwin Banks

Since all of the other plaintiffs will be dismissed, any further reference to "plaintiff" in this Decision and Order is a reference to plaintiff Edwin Banks only.

#### A. IFP Application

Upon review, it is found that plaintiff has submitted a completed, signed, and certified IFP Application (Dkt. No. 18) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Accordingly, plaintiff Edwin Banks' IFP Application (Dkt. No. 18) will be granted.

#### B. Initial Screening

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from a governmental entity or an officer or employee of a governmental entity, the sufficiency of the allegations set forth in the complaint must be considered in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks

---

tionship with Edwin Banks was interfered with because staff at Upstate C.F. impeded Edwin Banks' incoming and outgoing mail. "[T]o pursue a claim of interference with a familial relationship with an adult relative, a plaintiff must allege that the defendant or defendants acted with intent to interfere." *Campos v. Weissman*, No. 9:07–CV–1263 (FJS/RFT), 2011 WL 1204839, at *2 (N.D.N.Y. Mar. 29, 2011) (Order *adopting* Report–Recommendation); *see also Campos v. Weissman*, No. 9:07–CV–1263 (FJS/RFT), 2009 WL 7771872, at *6 (N.D.N.Y. Sept. 10, 2009) (Report–Recommendation) ("[V]irtually all other Circuits ... have determined that, when family members have been deprived of an adult family member, a defendant's intent to interfere with the relationship is a necessary component to show a protected liberty interest existed in maintaining that relationship") (citing cases); *see also Sharpe v. City of New York*, No. 11 Civ. 5494, 2013 WL 2356063, at *8 (E.D.N.Y. May 29, 2013) ("District courts within the Second Circuit have consistently held that intent to interfere is a necessary element [of a claim asserting interference with a familial relationship]."). There are simply no allegations to plausibly suggest such intent. Accordingly, Mary Banks, Angel Dublin, and Tawanda Starkey will not be given an opportunity to cure the deficiencies noted above. Moreover, Tawanda Starkey is not alleged to be a member of Edwin Banks' family.

2. To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir.1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

Although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, . . ." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted), the court also has a responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before permitting him to proceed.[3]

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favor-

able to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)).

## C. Summary of the Complaint

Plaintiff asserts allegations of wrongdoing arising out of his confinement at Upstate C.F. *See generally* Compl. Plaintiff names twenty-two defendants and seeks relief against them in their individual and official capacities. *Id.* at 2–5. In addition to numerous New York State Department of Corrections and Community Supervision ("DOCCS") employees and officials, plaintiff names Thomas Beilein, the Chairman of the New York State Commission of Correction; John Doe 1, the Union of Officers at Upstate C.F.; and John Doe 2, the Employer/Agent for the Medical Staff at Upstate C.F. *Id.* The facts are set forth as alleged by plaintiff in his complaint.

Plaintiff was transferred to Upstate C.F. on April 26, 2013. Compl. at 6. Upon his arrival, he was harassed and threatened by defendant Eddy, who among other things, told correctional officers that plaintiff had assault on staff charges against him, there-

---

**3.** "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07–CV–1241, 2008 WL 268215, at *1 n. 3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judi-

cial . . . resources[.]" *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Id.* at 325, 109 S.Ct. 1827.

by singling plaintiff out so that "he would be harassed by the officers." *Id.* Defendants Marshall and Sevey harassed plaintiff while passing out food trays. *Id.* at 23. On October 13, 2013, defendant Marshall threatened that he was "going to whip all the grievances" out of plaintiff. *Id.* at 25. When plaintiff refused to go to a medical appointment because of this threat, defendants Marshall and Sevey told plaintiff that he was "scared to come out of his cell and get his ass kicked like a man." *Id.* at 26. Plaintiff complained to defendant Eddy who said he did not care and wanted "to put a foot" in plaintiff's "ass also." *Id.*

On April 26, 2013, plaintiff told correctional officers that he practiced Judaism and needs to receive Kosher meals. *Id.* at 7. Correctional officers did not give plaintiff sealed Kosher meals from April 27, 2013, through April 29, 2013, so that they could tamper with plaintiff's unsealed meals. *Id.* As a result of this food tampering for two to three days, plaintiff developed diarrhea and vomiting for "around 3 days," and had stomach and abdominal pain for several days thereafter. *Id.* On April 29, 2013, defendant nurse Fairchild failed to provide medical treatment for plaintiff's stomach and abdominal pain, but at plaintiff's request, she contacted OMH because plaintiff was refusing to eat. *Id.* at 8. Within thirty minutes, plaintiff met with defendant Marinelli, an OMH psychiatrist, who told plaintiff that officers were hard on inmates with assault on staff charges, and that the only thing that he could do to help plaintiff was to order him Kosher trays, which he did; plaintiff began receiving Kosher trays at his next meal. *Id.*

Beginning on June 12, 2013, plaintiff "became aware" that his Kosher meals were being contaminated; plaintiff found dust or dirt on his bread and in his hot water and told defendant Sergeant Gil-

more, who only smirked at plaintiff and walked away "refusing to do anything." *Id.* at 10. Plaintiff began having stomach and abdominal pains, and "became very disoriented as if he was given some type of mental health or poisonous drugs." *Id.* Plaintiff stopped eating for three days. *Id.* at 11. Defendants Marshall, Sevey, Hide, and Page started serving plaintiff meals where the sporks were covered with a thick powdery substance and the bread was yellow, "like it had been mixed with something." *Id.* at 15. Starting on September 5, 2013, many of the sealed items on plaintiff's Kosher trays arrived open. *Id.* at 15–16. Plaintiff wrote to defendant Superintendent Rock on September 9, 2013, about Marshall and Sevey tampering with plaintiff's food trays from September 5, 2013, through September 9, 2013, and also tried to speak with him, but defendant Rock ignored plaintiff's request to talk to him and kept walking. *Id.* at 16. On September 17, 2013, defendant Marshall gave plaintiff a lunch tray where the seal on the macaroni salad appeared to have been tampered with, and after plaintiff ate it, he felt like he had ingested a psychotropic drug or some type of poison, had to stop eating for seven days, and still feels the after-effects whenever he lays on his right side. *Id.* at 17. Plaintiff filed a grievance about food tampering and being denied Kosher meals, but John Doe 4 (an unidentified Lieutenant), failed to properly investigate the grievance. *Id.* at 8.

On July 1, 2013, plaintiff noticed a small lump on his left eyeball. *Id.* at 11. Beginning on August 7, 2013, plaintiff developed blurry vision in his left eye and the eye throbbed periodically throughout the day; plaintiff also found blood in his stool. *Id.* On August 12, 2013, plaintiff saw defendant nurse Fairchild, who would not let plaintiff see a doctor about his eye and ignored his complaints about abdominal pain and blood in his stool. *Id.* On August

14, 2013, plaintiff saw defendant Lordi, who pretended not to notice plaintiff's eye condition, and "prevented him from being examined by a doctor." *Id.* at 12. Defendant Lordi gave plaintiff a test kit so that he could provide a fecal sample. *Id.* Defendants Fairchild and Lordi prevented plaintiff from receiving immediate medical care, and did so to cover up the contamination of his food by correctional officers. *Id.* at 12.

On September 23, 2013, plaintiff saw defendant Dr. Madalaywama about his stomach and abdominal pain, and eye condition, "but was not really provided any medical care." *Id.* at 20. Defendant Madalaywama said that he saw a small dot on plaintiff's left eye and would schedule plaintiff to see an eye doctor. *Id.* at 21. Defendant Madalaywama conducted a "half-hearted stomach and abdominal hand exam and then kicked [plaintiff] out" after giving him over the counter medication for acid reflux. *Id.* at 21. On September 25, 2013 plaintiff received a 7–day supply of Omeprazole [4] which was prescribed to him by defendant Dr. Madalaywama. *Id.* at 23. Since defendant Madalaywama never told plaintiff that he was prescribing this medicine, plaintiff never requested refills, "though there were around 52 refills total." *Id.* at 23. On October 3, 2013, after plaintiff was threatened by defendant Marshall, plaintiff refused to go to his eye doctor call-out at the hospital, because other inmates had told him that inmates get beat up at the hospital because there are no cameras. *Id.* at 25–26.

In an attempt to cover-up the contamination of plaintiff's food by correctional officers, the mental health staff authorized plaintiff to be involuntarily administered psychotropic drugs though his food. *Id.* at 29. Plaintiff wrote to defendant Marinelli, asking if OMH was giving plaintiff drugs, but he did not respond. *Id.* at 29, 36. Plaintiff believes that he is receiving the drugs due to a court order issued to the Superintendent of Southport Correctional Facility allowing plaintiff to be force fed.[5] *Id.* at 29–30. On October 23, 2013, plaintiff spoke to defendant Rock about his problems with forced drugs and defendant Rock told him "you always have problems" and walked away saying "tell it to someone who cares." *Id.* at 29.

Defendants Rock and Annucci did not provide a safe ventilation system at Upstate C.F. and, as a result, correctional officers were able to blow "toxic fumes through the ventilation system" into plaintiff's cell. *Id.* at 28, 50–51.

Plaintiff made multiple New York State Freedom of Information Law ("FOIL") requests to defendant Pickering, but the requests were denied for various reasons including that the items requested were unavailable, or that plaintiff needed to pay for the requested items. *Id.* at 9, 13, 18, 20.

Plaintiff sent letters to family and friends on August 4 and 13, 2013, but they never received them. *Id.* at 14. Plaintiff

---

**4.** Prescription omeprazole is used alone or with other medications to treat gastroesophageal reflux disease. *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a693050.html (last visited September 12, 2014).

**5.** In apparent support of his claim that he was being forcibly medicated, plaintiff alleges that on September 24, 2013, two nurses, who acted suspiciously, performed a TB blood test on plaintiff. Compl. at 21–22. Plaintiff believes that the tip of the needle had to have something in it because 20 minutes later, plaintiff developed a slight pain where the needle entered, which then traveled to his right upper back, down his thoracic area, and latched on to the right side of his lower abdominal area near his bladder and colon. *Id.* Plaintiff does not associate any named defendant with this alleged wrongdoing.

has not received any mail from his family even though on September 11, 2013, another inmate told plaintiff that when defendant Page was delivering mail, the inmate noticed mail for plaintiff on the cart. *Id.* at 14–15. Officers have a policy and practice of interfering with inmate mail to prevent them from getting outside assistance. *Id.* In September, 2013, Tawanda Starkey, a family friend, told plaintiff she sent him two letters which he never received. *Id.* at 16. Plaintiff sent a letter to his sister, Angel Dublin, on September 18, 2013, but she never received it. *Id.* at 20.

Defendant Marshall and C.O. Van Ornum[6] searched plaintiff's cell on October 29, 2013, and illegally confiscated legal material "in the form of a rough draft of this complaint" and a pen. *Id.* at 32. This was done to hinder plaintiff's right to seek redress for violations of his rights. *Id.*

Plaintiff filed multiple grievances complaining about, among other things, food tampering and lack of adequate medical care, but his grievances were intentionally mishandled or mischaracterized by defendants Annucci, Bellamy, Rock, and Woodward. *Id.* at 12, 18, 19, 20, 21, 23–26. Defendants Annucci and Rock intentionally mishandle prisoner complaints "to insulate themselves from any liabilities." *Id.* at 20.

The forced administration of psychotropic drugs creates "the future potential" for plaintiff to become very volatile around his family once he is released on parole. *Id.* at 31. Plaintiff wants to submit a health care proxy, and was given the form to do so on September 23, 2013, and told that it must be filled out during a doctor's visit, but he has been prevented from filling it out because he cannot get two witnesses. *Id.* at 30–31. As a result, plaintiff cannot give his health care proxy to his sister, Angel Dublin or his friend, Tawanda Starkey. *Id.* at 32.

Plaintiff wrote to defendant Koenigsmann on August 8, 2013, complaining about the nurses denying him medical attention, and sent a copy of the letter to defendant Superintendent Rock. *Id.* at 13. Grinsbergs (not a defendant) responded to plaintiff on behalf of defendant Koenigsmann, and refused to acknowledge the nurses' misconduct. *Id.* Nurse administrator Smith (not a defendant) also responded, stating that plaintiff would be seen in the future by someone. *Id.* at 14. Defendant Rock never responded. *Id.*

Defendants Annucci; Rock; Koenigsmann; and John Doe 3, Deputy Superintendent of Security are responsible as supervisors for the alleged wrongdoing of their staff. *See generally* Compl.

Plaintiff complained to defendant Beilein, the Chairman of the New York State Commission of Correction in September, 2013, about misconduct of DOCCS staff, but defendant Beilein did not respond, and intentionally mishandles prisoner complaints "to insulate [himself] from any liabilities" and intentionally neglects to oversee DOCCS and ignores and fails to investigate wrongdoing by DOCCS staff. Compl. at 19–20, 45–46. Defendant Fonda, the DOCCS Inspector General, ignores inmate complaints and fails to properly investigate them or remedy wrongs. *Id.* at 46. John Doe 1, the Union of Officers at Upstate C.F., "has promoted" and helped officers cover-up their misconduct and "has put in place and help[ed] establish a reign of terror campaign" to prevent other officers from speaking up about corruption. *Id.* at 33. John Doe 2, the

---

**6.** Although plaintiff asserts allegedly wrongful conduct committed by C.O. Van Ornum, he or she is not a named defendant.

Employer/Agent for the medical staff at Upstate C.F., is responsible for hiring and training medical staff, and hires unqualified staff. *Id.* at 33.

Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. *Id.* at 51–54. For a more complete statement of plaintiff's claims, see the entire complaint.

Construed liberally, plaintiff alleges the following claims: (1) defendants Eddy, Marshall, and Sevey verbally harassed and threatened plaintiff; (2) defendants Marshall, Sevey, Hide, and Page, tampered with plaintiff's food in violation of the Eighth Amendment, and defendants Rock and Gilmore failed to correct the misconduct; (3) defendants Marshall, Sevey, Hide, and Page contaminated plaintiff's Kosher meals in violation of the First Amendment free exercise clause; (4) ·defendants Fairchild, Marinelli, Lordi, and Madalaywama denied plaintiff adequate medical or mental health care in deliberate indifference to his serious medical or mental health needs in violation of the Eighth Amendment; (5) defendant Pickering denied plaintiff's FOIL requests; (6) defendant Page interfered with plaintiff's incoming and outgoing mail in violation of the First Amendment; (7) defendant Marshall and C.O. Van Ornum illegally confiscated plaintiff's property in violation of Fourteenth Amendment due process; (8) defendant Marshall and C.O. Van Ornum interfered with plaintiff's access to the courts in violation of the First Amendment; (9) defendants Annucci, Rock, Bellamy, and Woodward improperly handled and investigated plaintiff's grievances; (10) defendants Rock and Annucci failed to provide safe ventilation at Upstate C.F. in violation of the Eighth Amendment; (11) plaintiff's family relations have been interfered with; (12) defendant Beilein failed to supervise DOCCS staff or to correct the misconduct of DOCCS officials and employees; (13) defendants Annucci; Bellamy; Rock; Woodward; Fonda; Eddy; and John Doe 4, an unidentified DOCCS Lieutenant, failed to properly investigate wrongdoing of DOCCS staff; (14) John Doe 1, the Union of Officers at Upstate C.F., has established and allows to continue among its members "a policy and custom of illegal behavior"; (15) John Doe 2, the Employer/Agent for the medical staff at Upstate C.F. failed to properly hire and train medical staff at Upstate C.F.; and (16) defendants Annucci; Rock; Koenigsmann; and John Doe 3, Deputy Superintendent of Security are liable as supervisors for the alleged wrongdoing of their staff.

## D. Analysis

■ Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). In order to maintain a Section 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*

### 1. Official Capacity Claims

■ The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental

principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10–21, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365–66 (2d Cir.2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343–45, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir.1977); *Dawkins v. State of New York,* No. 93–CV–1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).[7]

■ Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against the state defendants in their official capacities, *see* Compl. at 5, those claims are barred by the Eleventh Amendment and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 2. Verbal Threats and Harassment

■ Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam); *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord,* 119 F.Supp.2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

Accordingly, plaintiff's claims that defendants Eddy, Marshall, and Sevey verbally harassed and threatened him will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Eighth Amendment Food Tampering

■ The Eighth Amendment requires that prisoners be provided with "nutrition-

---

7. In *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of

federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir.2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.,* 945 F.2d 25, 32 (2d Cir.1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

ally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (citation omitted); *Brown v. Eagen,* No. 9:08–CV0009 (TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); *Midalgo v. Bass,* No. 9:03–CV–1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006) (citations omitted).

### a. Defendants Marshall, Sevey, Hide, Page, and Rock

Plaintiff alleges that on multiple occasions, defendants Marshall, Sevey, Hide, and Page tampered with or contaminated plaintiff's meals. Compl. at 7–17. Plaintiff wrote to defendant Superintendent Rock on September 9, 2013, about the food tampering, and also tried to speak with him, but defendant Rock ignored plaintiff's request to talk to him and kept walking. *Id.* at 16, 19. The food tampering continued after plaintiff advised defendant Rock of the misconduct. *Id.* at 16–23.

■■■Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008), it is found that plaintiff's Eighth Amendment food tampering claims against defendants Marshall, Sevey, Hide, and Page, and the claim that defendant Rock failed to correct the wrongdoing after learning of it, survive sua sponte review and require a response. In so ruling, no opinion is expressed as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### b. Defendant Gilmore

Plaintiff claims that in June, 2013, plaintiff told defendant Sergeant Gilmore that he found dust or dirt in his food, but defendant Gilmore just smirked and walked away. Compl. at 10. This allegation, without more, is insufficient to plausibly suggest a claim of constitutional dimension against defendant Gilmore. Accordingly, plaintiff's Eighth Amendment claim against defendant Gilmore that he failed to correct food tampering by other staff will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### 4. First Amendment Free Exercise

■■ Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). "To state a First Amendment free exercise claim, plaintiff must allege (1) that the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) that the challenged practice of the prison officials infringes upon the religious belief; and (3) that the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988) (citations omitted.)

Plaintiff alleges that he is a practicing Jew, and that on multiple occasions, defendants Marshall, Sevey, Hide, and Page tampered with plaintiff's sealed Kosher meals by unsealing the items and/or contaminating them. Compl. at 7–17.

■■ Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008), it is found that plaintiff's First Amendment free exercise claims against defendants Marshall, Sevey,

Hide, and Page survive sua sponte review and require a response. In so ruling, no opinion is expressed as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 5. Eighth Amendment Medical Indifference

The Eighth Amendment prohibits cruel and unusual punishment which encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations and quotations omitted). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer*, 511 U.S. at 825, 834, 114 S.Ct. 1970. Deliberate indifference has two necessary components, one objective and the other subjective. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). The objective component of an Eighth Amendment deliberate indifference claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir.2011) (quoting *Hathaway*, 99 F.3d at 553) (internal quotation marks omitted). Subjectively, the official must have the requisite state of mind, which is the "equivalent of criminal recklessness." *Hathaway*, 99 F.3d at 553.

The protections afforded by the Eighth Amendment do not extend to remedy harms which may be inflicted as a result of conduct amounting to negligence or medical malpractice but not encompassing conscious disregard of an inmate's health. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105–06, 97 S.Ct. 285. Additionally, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists ... are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 312 (S.D.N.Y. 2001); *see also Estelle*, 429 U.S. at 107, 97 S.Ct. 285 (noting that medical decisions such as whether or not to order X-rays or other "diagnostic techniques" do not rise to the level of cruel and unusual punishment but "implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."); *Graham v. Gibson*, No. 04–CV–6088, 2007 WL 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) ("Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation."); *Jones v. Westchester Cnty. Dept. of Corrs. Med. Dept.*, 557 F.Supp.2d 408, 413 (S.D.N.Y.2008) (The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the

inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'"). "Determinations made by medical providers within their discretion are given a 'presumption of correctness' when it concerns the care and safety of patients." *Mendoza v. McGinnis*, No. 9:05–CV–1124 (TJM/DEP), 2008 WL 4239760, at *11 (N.D.N.Y. Sept. 11, 2008).

▉ Plaintiff alleges that when he saw defendant Fairchild on April 29, 2013, about stomach and abdominal pain, she refused to do anything, but at plaintiff's request, she contacted OMH because plaintiff refused to eat, and an OMH psychiatrist met with plaintiff within thirty minutes. Compl. at 8. Plaintiff's allegations do not suggest that he was suffering from a serious medical condition or that defendant Fairchild acted with deliberate indifference to such a condition. Indeed, defendant Fairchild promptly contacted OMH at plaintiff's request when he told her he was refusing to eat.

▉ Plaintiff alleges that defendant Marinelli met with plaintiff on April 29, 2013, because plaintiff was not eating his food for fear that it was being contaminated, and in response, defendant Marinelli arranged for plaintiff to receive sealed Kosher meals which plaintiff began receiving that same day. These allegations do not plausibly suggest that defendant Marinelli was deliberately indifferent to plaintiff's serious medical or mental health needs.

▉ On August 12, 2013, and August 14, 2013, plaintiff was examined by defendants Fairchild and Lordi, respectively, because plaintiff noticed a lump on his left eyeball, and was experiencing blurry vision, and his eye throbbed periodically. Compl. at 11–12. Neither Fairchild nor Lordi would let plaintiff see a doctor. *Id.* Plaintiff did see Dr. Madalaywama about

his eye problems on September 23, 2013, who then scheduled plaintiff to see an eye doctor. *Id.* at 20. "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *Culp v. Koenigsmann*, No. 99 Civ. 9557, 2000 WL 995495, at *7–8 (S.D.N.Y. July 19, 2000) (quoting *Demata v. NYS Corr. Dep't of Health Servs.*, No. 99–0066, 198 F.3d 233 (table), 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999)); *see also Amaker v. Coombe*, No. 96 Civ. 1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("A delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.") (citing cases); *Sonds*, 151 F.Supp.2d at 312 (noting that some delays in receiving medical treatment are common even outside the prison context). In this case, there are no allegations to plausibly suggest that plaintiff was suffering from a "life-threatening and fast-degenerating" condition when he was examined by defendants Fairchild or Lordi, or that the six-week delay in seeing a doctor for his eye and stomach problems amounted to deliberate indifference to a serious medical need. Plaintiff also alleges that in response to plaintiff's complaint of blood in his stool, defendant Lordi provided plaintiff with test kit so that he could provide a fecal sample for further examination, *id.* at 12, which contradicts plaintiff's assertion that defendant Lordi prevented him from

receiving immediate medical care, and does not demonstrate deliberate indifference.

▮ Finally, plaintiff alleges that he was examined by defendant Dr. Madalaywama on September 23, 2013. *Id.* at 20. Defendant Madalaywama examined plaintiff's eye and scheduled him to see an eye doctor. *Id.* at 21. The fact that defendant referred plaintiff to a specialist does not exhibit deliberate indifference. Although plaintiff claims that defendant Madalaywama performed a "half-hearted" examination of plaintiff's stomach, he nonetheless gave plaintiff over the counter acid reflux medicine for his abdominal pain, and also prescribed Omeprazole, which plaintiff chose not to refill, because defendant Madalaywama never told plaintiff that he was going to prescribe it. *Id.* Plaintiff's allegations in this regard suggest at best a disagreement with treatment which fails to state an Eighth Amendment claim. Moreover, plaintiff has alleged no facts to plausibly suggest that defendant Dr. Madalaywama acted with the requisite deliberate indifference to any of plaintiff's medical needs.

Plaintiff's Eighth Amendment medical indifference claims against defendants Fairchild, Marinelli, Lordi, and Madalaywama will therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

### 6. FOIL

▮ Plaintiff alleges that he submitted FOIL requests to defendant Pickering, who either denied the requests, or did not adequately respond to them. A violation of New York State FOIL does not give rise to a federal claim under Section 1983. *Sonds v. Cuomo,* No. 9:11–CV–0895 (NAM/ATB), 2012 WL 952540, at *3 (N.D.N.Y. Feb. 3, 2012) ("Plaintiff's state FOIL request cannot be the basis of a

federal action."). *See also Pollnow v. Glennon,* 757 F.2d 496, 501 (2d Cir.1985) ("Clearly, a violation of state law is not cognizable under § 1983."). "The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78 upon exhaustion of administrative remedies." *Schuloff v. Fields,* 950 F.Supp. 66, 67–68 (E.D.N.Y.1997); *Posr v. City of N.Y.,* No. 10–CV–2551, 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013) ("Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78." (citing N.Y. Pub. Off. Law § 89)).

Accordingly, plaintiff's claim that defendant Pickering violated FOIL will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### 7. First Amendment Mail Interference

▮ The First Amendment protects an inmate's right to send and receive both legal and nonlegal mail, although prison officials may regulate that right if the restrictions they employ are " 'reasonably related to legitimate penological interests.' " *Thornburgh v. Abbott,* 490 U.S. 401, 409, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)); *see also Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir.2006) (holding that prisoners do have a right—albeit a limited one—to send and receive mail) (citation omitted). Legal mail is entitled to greater protection from interference than nonlegal mail. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). A

single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge. *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975). "Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Davis*, 320 F.3d at 351 (quoting *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001)).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir.2008), it is found that plaintiff's First Amendment mail interference claim against defendant Page survives sua sponte review and requires a response. In so ruling, no opinion is expressed as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 8. Fourteenth Amendment Due Process Regarding Property

 The Supreme Court has held that the unauthorized intentional taking or destruction of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)); *see also Rivera–Powell v. N.Y.C. Board of Elections*, 470 F.3d 458, 465 (2d Cir.2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural

due process requirements so long as it provides [a] meaningful post deprivation remedy."). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir.2001); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir.2009) ("The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property].").

Therefore, plaintiff's Fourteenth Amendment due process claims against defendant Marshall regarding the taking of his property from his cell will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[8]

### 9. First Amendment Denial-of–Access–to–the–Courts

 "A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir.1986) (citing *Bounds v. Smith*, 430 U.S. 817, 821–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully*, 815 F.Supp. 713, 725 (S.D.N.Y. 1993). To state a claim for denial of access to the courts, a plaintiff must allege facts plausibly suggesting that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *How-*

---

8. Insofar as plaintiff may allege that the cell search was illegal, he fails to state a claim. The Supreme Court has ruled that inmates have no constitutional protection from cell searches, even those conducted for retaliatory

reasons. *See Hudson v. Palmer*, 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("[T]he Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells.").

*ard v. Leonardo,* 845 F.Supp. 943, 946 (N.D.N.Y.1994). *See also Cancel,* 2001 WL 303713, at *4 ("[I]n order to survive a motion to dismiss [an access-to-the-courts claim] a plaintiff must allege not only that the defendant's conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim."); *Konigsberg v. Lefevre,* 267 F.Supp.2d 255, 261 (N.D.N.Y.2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim."). Plaintiff alleges that in order to hinder his right to seek redress for violation of his rights, defendant Marshall and C.O. Van Ornum "illegally confiscated" the "rough draft of [the] complaint" for this action. Compl. at 32. However, plaintiff has alleged no actual injury as a result of this conduct, let alone that any defendant acted deliberately or maliciously. Indeed, plaintiff subsequently filed the complaint for this action.[9]

Plaintiff's First Amendment denial-of-access-to-the-courts claims against defendant Marshall will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10. Access to Grievance Process

 There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi,* No. 9:01–CV–0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("Participation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005) ("Inmate grievance

programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel,* 2001 WL 303713, at *3 ("[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr,* No. 09–CV–5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

In light of the foregoing, plaintiff's claims that his grievances were not properly addressed and/or responded to by defendants Annucci, Rock, Bellamy, and Woodward fail as a matter of law and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 11. Interference with Family Relations

"The Supreme Court has acknowledged that citizens enjoy ... the right 'to enter into and maintain certain intimate human relationships' without 'undue intrusion by the State,' (categorized as intimate association rights)." *Campos v. Weissman,* No. 9:07–CV–1263 (FJS/RFT), 2009 WL 7771872, at *5 (N.D.N.Y. Sept. 10, 2009) (Report–Recommendation and Order), *adopted Campos v. Weissman,* 2011 WL

---

**9.** Plaintiff also alleges that staff at Upstate C.F. are impeding his legal research by failing to send him legal material that he requests. Compl. at 37. Plaintiff does not associate any

defendant with this conduct, and in any event, fails to state a claim for denial of access to the courts because he alleges no actual injury.

1204839 (N.D.N.Y. Mar. 29, 2011), (citing *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). "The precise source of the right to intimate association remains unclear." *Campos,* 2009 WL 7771872, at *5. "Generally, courts faced with this issue seem to agree that … claims related to familial relationships fall under the liberty interests protected by the Substantive Due Process component of the Fourteenth Amendment." *Id.* "District courts within the Second Circuit have consistently held that intent to interfere is a necessary element [of a claim asserting interference with a familial relationship]." *Sharpe v. City of New York,* No. 11 Civ. 5494, 2013 WL 2356063, at *8 (E.D.N.Y. May 29, 2013); *Laureano v. Goord,* No. 06 Civ. 7845, 2007 WL 2826649, at *12 (S.D.N.Y. Aug. 31, 2007) (Report–Recommendation) ("There is a cognizable distinction between a state actor that intentionally targets the intimate associations of a person, which is a protected right in this circuit, and circumstances … whereby a state actor allegedly commits actions that indirectly affect those relationships. Were this Court to recognize the latter, it would authorize innumerable additional individual actions by family members of adult victims of state actions."), *adopted* at 2007 WL 2852770 (S.D.N.Y. Sept. 28, 2007).[10]

■ Construed liberally, plaintiff claims his "family relations" were interfered because he was (1) given "some type of psychotropic drugs" in his food without his consent which will create the "future potential for him to become very volatile around [his family] once he's released on parole;" and (2) denied "an opportunity to properly execute" a health care proxy assigning legal authority over to his sister or family friend. Compl. at 31–32. Even accepting these allegations as true, there

are no allegations in the complaint to plausibly suggest that plaintiff was allegedly drugged or denied the right to execute a health care proxy with the specific intent to deprive plaintiff of his familial relationship. Thus, there is no recognized liberty interest at issue and so no plausible cause of action has been stated. Moreover, even if plaintiff could state such a claim, he does not associate any of the defendants with the alleged wrongdoing.

Plaintiff's claims regarding interference with his familial relationships will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## 12. Eighth Amendment Conditions–of–Confinement Claim Against Defendants Rock and Annucci Regarding Ventilation

■ To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985); *see also Jolly,* 76 F.3d at 480, and (2) that the defendants acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294, 303–04, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Plaintiff alleges that defendants Rock and Annucci did not provide a safe ventilation system at Upstate C.F., which in turn allowed correctional officers to pipe noxious gases into plaintiff's cell. Compl. at 28, 50–51. Plaintiff's claim in this regard

---

**10.** *See also* Part II n. 1, *supra.*

fails because (1) it is wholly conclusory, with no facts to support it; and (2) there are no facts to plausibly suggest that defendants Rock and Annucci were either personally involved in allegedly sending noxious gas into plaintiff's cell, or that defendants Rock and Annucci were aware that this was allegedly occurring such that they could have corrected it. Plaintiff's allegations similarly fall short of establishing an Eighth Amendment violation because the complaint fails to allege awareness on the part of the defendants of any condition which would expose plaintiff to a risk of harm, therefore plaintiff has failed to allege that defendants Rock and Annucci acted, or failed to act, with the requisite deliberate indifference.

Plaintiff's Eighth Amendment claims against defendants Rock and Annucci regarding the unsafe ventilation system will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 13. Claims Against Defendant Beilein

Construed liberally, plaintiff claims that defendant Beilein, whom he identifies as the Chairman of the New York State Commission of Correction, failed to correct the misconduct of DOCCS staff after he received reports of the misconduct. "[M]embers of the Commission [of Correction] are not endowed with any operational or supervisory responsibilities of the ... New York [DOCCS] Facilit[ies] ... and thus have no power to control the internal policies or procedures of each institution." *McDowell v. Stewart*, No. 9:06–CV–1060 (GLS/DRH), 2008 WL 755291, at *4 (N.D.N.Y. Mar. 19, 2008) (internal quotations omitted); *Davis v. Chapple*, No. 9:07–CV–0321 (GTS/DRH), 2008 WL

4663223, at *3 (N.D.N.Y. Oct. 20, 2008) (same). Thus, defendant Beilein cannot be held liable for failure to supervise DOCCS or its employees, or to correct alleged wrongdoing by DOCCS staff, because the Commission of Correction is not possessed of that type of responsibility or power.[11]

Defendant Beilein, and all claims against him, will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 14. Failure to Investigate

The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) (collecting cases); *see also Torres v. Mazzuca*, 246 F.Supp.2d 334, 341–42 (S.D.N.Y.2003) (prisoners do not have a due process right to a thorough investigation of grievances). The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Pine v. Seally*, No. 9:09–CV–1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("[T]he law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein*, 591 F.Supp.2d at 460). Thus, insofar as plaintiff alleges that defendants Annucci, Bellamy, Rock, Woodward, Fonda, Eddy, and John Doe 4 (unidentified Lieutenant), failed to adequately investigate plaintiff's claims of misconduct by DOCCS

---

**11.** Indeed, the public website established for the New York State Commission of Correction specifically states that "[t]he Commission of Correction does not hire or oversee Correctional Officers." *See* http://www.scoc.ny.gov/about.htm.

staff, he fails to state a claim under Section 1983.

Plaintiff's failure-to-investigate claims against defendants Annucci, Bellamy, Rock, Woodward, Fonda, Eddy, and John Doe 4 (unidentified Lieutenant) will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[12]

### 15. John Doe 1, Union of Officers at Upstate C.F.

To succeed on a Section 1983 claim, a plaintiff must show that the defendants, acting under the color of state law, deprived him of a constitutional right. *Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir.1995). Unions representing public employees "generally are not state actors." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir.2002); *see also Williams v. New York City Housing Auth.*, 335 Fed. Appx. 108, 110 (2d Cir.2009) (union is not a state actor). In fact, plaintiff does not allege that defendant John Doe 1, Union of Officers at Upstate C.F., acted under state law.

Accordingly, plaintiff's Section 1983 claims against defendant John Doe 1, Union of Officers at Upstate C.F., will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 16. John Doe 2, Employer/Agent for Medical Staff at Upstate C.F.

Plaintiff alleges that John Doe 2 is the entity that hires and employs the medical staff at Upstate C.F., and as such, is responsible for the wrongdoing of the medical staff (as alleged in plaintiff's complaint), because it hires medical staff

"based on a system of family and friends favor[i]tism" and "inadequately train[s]" the medical staff. Compl. at 47. However, even if it were assumed for purposes of this review that John Doe 2, whom plaintiff refers to as a "medical entity," *see* Compl. at 47, was a "person" acting under color of state law for purposes of Section 1983, since all of the claims against the medical staff at Upstate C.F. have been dismissed, there are no allegations of wrongdoing for which John Doe 2 could be considered liable. Additionally, plaintiff's conclusory allegations that this "medical entity" failed in its supervisory responsibilities, with no facts to support this claim, are insufficient to state a claim against John Doe 2.

Accordingly, plaintiff's claims against defendant John Doe 2, Employer/Agent for medical staff at Upstate C.F., will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 17. Forced Medication

 The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment. *See, e.g., Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"). The Second Circuit has held, moreover, that "[i]t is a firmly established principle of the common law of New York that every individual of adult years and sound mind has a right to determine what shall be done with his own body and to control the course of his medical treatment." *Kulak*

---

12. Plaintiff also asserts a failure-to-investigate claim against defendant Beilein, *see* Compl. at 45–46, however, all claims against defendant Beilein were dismissed. *See* Part III.D.13, *supra*.

*v. City of New York,* 88 F.3d 63, 74 (2d Cir.1996) (quoting *Rivers v. Katz,* 67 N.Y.2d 485, 492, 495, 504 N.Y.S.2d 74, 495 N.E.2d 337 (1986)); *see also Project Release v. Prevost,* 722 F.2d 960, 978–80 (2d Cir.1983). Such a right may be set aside only in narrow circumstances, including those where the patient "presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution." *Id.* Here, plaintiff merely alleges in conclusory fashion that he believes that psychotropic drugs were being placed in his food without his consent. Plaintiff has failed to allege any facts to support this claim. To the contrary, plaintiff also alleges that the forced medication was pursuant to a court order obtained by the Superintendent of Southport Correctional Facility, which, if true, would seemingly negate the need for his consent.

Moreover, even if his allegations were sufficient to meet the Fourteenth Amendment due process standard, plaintiff has not alleged that any of the defendants were personally involved in allegedly medicating him without his consent. *See Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (Any complaint that fails to allege personal involvement in the alleged unlawful conduct is "fatally defective on its face."); *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986) (to prevail on a Section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant). Plaintiff only generally alleges that OMH was giving him psychotropic drugs without his consent and that the facility has a history of administering drugs in prisoner's food without due process or consent.

Compl. at 17–18. Plaintiff does not identify an individual who could be held responsible for this alleged misconduct, and more importantly, does not implicate any defendant in this alleged misconduct.[13]

Plaintiff's Fourteenth Amendment forced medication claim will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**18. Supervisory Claims**

 A prerequisite to an award of damages on a Section 1983 claim against an individual is the personal involvement of the individual in the alleged unconstitutional deprivation. *See Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (citations omitted). To prevail, the plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant. *Bass,* 790 F.2d at 263. Where a defendant is a supervisory official, a mere "linkage" to the unlawful conduct through the "chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *see also Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).

 In the case of supervisory officials, personal involvement may be established in several ways: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the

---

13. Plaintiff does state that he wrote to defendant Marinelli asking if he was being medicated, but defendant Marinelli did not respond. Compl. at 29, 36. This is insufficient to implicate defendant Marinelli in the alleged forced medication of plaintiff.

wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986)).[14]

### a. Defendant Rock

Initially, it is noted that defendant Rock has been directed to respond to plaintiff's claim that he failed to correct the alleged misconduct, i.e. food tampering, of defendants Marshal, Sevey, Hide, and Page, after it was called to his attention. *See* Part III.D.3.a. Apart from this claim against defendant Rock, plaintiff also alleges that on October 23, 2013, he told defendant Rock that he was being forcibly medicated, and Rock replied, "you always have problems" and walked away saying "tell it to someone who cares." Compl. at 29. Plaintiff sent defendant Rock a copy of a letter that was addressed to defendant Koenigsmann about his lack of adequate medical care, but Rock never responded. *Id.* at 13. Plaintiff does not allege that defendant Rock was personally involved in forcibly medicating plaintiff or denying him adequate medical care. Since it has already been determined that plaintiff failed to state a claim for forced medication or inadequate medical care against

any of the defendants, there is no unconstitutional conduct in this regard which defendant Rock, as a supervisor, can be held responsible. *See Toole v. Connell*, No. 9:04–CV–0724 (LEK/DEP), 2008 WL 4186334, at *1, *7 (N.D.N.Y. Sep. 10, 2008) (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under § 1983); *see also Linares v. Mahunik*, No. 9:05–CV–0625 (GLS/RFT), 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation").

Therefore, plaintiff's claim that defendant Rock failed to correct any wrongdoing associated with plaintiff's alleged forced medication or lack of adequate medical care will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Defendant Koenigsmann

█ Plaintiff wrote to defendant Koenigsmann on August 8, 2013, complaining that nurses denied him medical attention. Compl. at 13. Grinsbergs, who is not a defendant, responded to plaintiff on behalf of defendant Koenigsmann, and refused to acknowledge the nurses' misconduct. *Id.* It is well settled in the Second Circuit that merely receiving letters from an inmate and referring the letters to others does not constitute personal involvement

---

**14.** Whether all five *Colon* factors for supervisor liability remain available in light of the Supreme Court's decision in *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, has been debated by the district courts in this circuit. *See, e.g., Pearce v. Estate of Longo*, 766 F.Supp.2d 367, 376 (N.D.N.Y.2011), *rev'd in part on other grounds sub nom., Pearce v. Labella*, 473 Fed.Appx. 16 (2d Cir.2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.*, 743 F.Supp.2d 175, 185 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster....."); *D'Olimpio v. Crisafi*, 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that *Iqbal* eliminated *Colon*'s personal involvement standard).

for the purposes of Section 1983 liability. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Smith v. Masterson,* No. 05 Civ. 2897, 2006 WL 2883009, at *13 (S.D.N.Y. Sept. 29, 2006). *See also Youngblood v. Artus,* No. 9:10–CV–0752, 2011 WL 6337774, at *10 (N.D.N.Y. Dec. 19, 2011) ("[P]ersonal involvement has not been shown where a supervisor's only response to an inmate's complaint is to refer the complaint to the appropriate staff for investigation.") (citing *Harnett v. Barr,* 538 F.Supp.2d 511, 524 (N.D.N.Y.2008); *Vega v. Artus,* 610 F.Supp.2d 185, 198 (N.D.N.Y.2009)). Thus, insofar as plaintiff alleges that Koenigsmann received a complaint from plaintiff and referred the matter to his staff, this allegation alone is insufficient to constitute the personal involvement of defendant Koenigsmann. Moreover, because it has already been determined that plaintiff failed to state a claim for inadequate medical care against any of the defendants, there is no unconstitutional conduct in this regard which defendant Koenigsmann, as a supervisor, can be held responsible. *See Toole,* 2008 WL 4186334, at *1, *7; *see also Linares,* 2006 WL 2595200, at *11.

Therefore, plaintiff's claim that defendant Koenigsmann failed to correct any wrongdoing associated with plaintiff's alleged lack of adequate medical care will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Remaining Supervisory Claims

In this case, apart from any allegations already discussed above against defendants Rock, Annucci, or Koenigsmann,[15] plaintiff does not contend that defendants Acting Commissioner Annucci; Superintendent Rock; Chief Medical Officer Koe-

nigsmann; or John Doe 3, Deputy Superintendent of Security, directly participated in the alleged constitutional violations outlined in the complaint. Rather, the gravamen of the remaining complaints against these defendants is that they were in positions of power, and therefore involved with anything occurring in conjunction with plaintiff's conditions of confinement. Indeed, the major portion of the allegations against these defendants are conclusory assertions that these defendants (1) created or allowed to continue customs and policies which allowed the alleged wrongdoing to occur; (2) failed to properly supervise staff, or (3) failed to correct the misconduct of staff after receiving reports of the misconduct. For example, plaintiff alleges that:

(1) there is a long-standing policy and custom at Upstate C.F. for "officers [to] brutalize and terrorize" inmates who have received assault on staff charges or who complain about staff misconduct, Compl. at 6;

(2) supervisors have a policy of passing problems on to underlings to insulate themselves from liability, *id.* at 13;

(3) defendants have "allowed and created a culture of corruption within DOCCS and Upstate C.F., in which officers are allowed to willfully violate prisoners rights," and to cover up violations, they make sure the violations are not properly investigated and the officers not punished, *id.* at 32;

(4) "[t]he main problems extend[ ] to the Commissioner's office failure to establish proper[ ] mental health policy and procedures for selecting officers and other DOCCS employees," *id.* at 33–34;

(5) they have a pattern of favoritism for certain families resulting in bad staff; *id.* at 34;

---

**15.** *See* Part III.D.12 and Part III.D.18.a. and 18.b.

(6) in order to cover-up misconduct, defendants have created a culture of corruption in which they retaliate against prisoners, and have an unwritten policy of conspiring against plaintiff and inmates like him, *id.;*

(7) Annucci, Rock, and John Doe 3, Deputy Superintendent of Security, are aware that officers are incompetent but ignore it so they can insulate themselves from liability, *id.* at 35;

(8) Upstate staff are participating in a culture of corruption, of which DOCCS staff are aware, and have even helped to establish it "by allowing a family and friends monopoly" at DOCCS facilities, *id.* at 37–38;

(9) DOCCS has failed to properly select, hire and train staff members, *id.* at 38; and

(10) defendants "conspire against prisoners" who file grievances and complaints, *id.*

Plaintiff's attempt to establish personal involvement based upon the supervisory roles these defendants occupied is inappropriate. *See, e.g., Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998) (plaintiff "must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights"); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal

involvement); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (dismissal of a Section 1983 claim is proper where plaintiff does no more than allege defendant was in charge of the prison); *Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011) (conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon* ); *White v. Fischer,* No. 9:09–CV–0240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *Nash v. McGinnis,* 585 F.Supp.2d 455, 460 (W.D.N.Y.2008) ("Although plaintiff need not plead facts in great detail, the formulaic allegation that [the Superintendent] was aware of the alleged violations and did nothing to stop them from occurring, without *some* factual allegations to explain the basis for that conclusion, is insufficient to render it plausible that [the Superintendent] was personally involved in the alleged constitutional deprivations."); *Castillo v. Comm. New York State Dep't of Corr. Serv.,* No. 06–CV–858A, 2008 WL 4501881, at *2 (W.D.N.Y. Sep. 30, 2008) (A "vague reference" to alleged unconstitutional policy is insufficient to establish personal involvement). *See also Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation omitted).[16]

---

**16.** *See also Pettus,* 554 F.3d at 300 ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference

As a result, it is found that plaintiff's remaining claims against defendants Annucci, Rock, Koenigsmann, and John Doe 3 will be dismissed pursuant to ·28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[17]

## IV. MOTIONS FOR APPOINTMENT OF COUNSEL

■ Turning to plaintiff's motions for appointment of counsel (Dkt. Nos. 3, 16), courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974

(N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802.F.2d at 61).

■ The issue of appointment must be considered carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989). Therefore, the "likelihood of merit" of the underlying dispute must be looked to. *Hendricks,* 114 F.3d at 392; *Cooper,* 877 F.2d at 174. Plaintiff has yet to make this showing. Moreover, even if it were concluded that plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; (2) it appears as though, to date, plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under Section 1983 by pro se litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) *if* this case survives any dispositive motions filed by defendants, it is highly probable that trial counsel will be appointed at the final pretrial conference; and (5) the undersigned is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

For these reasons, plaintiff's motions for the appointment of counsel (Dkt.Nos.3, 16) will be denied.

---

to the possibility that his subordinates would violate [plaintiff's] constitutional rights.'').

**17.** The only claim remaining against defendant Rock is the claim that he failed to correct alleged food tampering after it was reported to him. *See* Part III.D.3.a, *supra.*

## V. MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF

 Preliminary injunctive relief " 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)). The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir.2010). To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Id.* at 35; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir.2011). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Id.; see also Jolly*, 76 F.3d at 473. Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.*, 598 F.3d at 35 n. 4 (internal quotation marks omitted). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL–CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir.1992); *Perri v.*

*Bloomberg*, No. 06–CV–403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul. 31, 2008).

 In his first motion for preliminary injunctive relief (Dkt. No. 4), plaintiff alleges that he has been "harassed, threatened and brutalized" at Upstate C.F. Dkt. No. 4 at 1. Plaintiff seeks a court order enjoining defendants from, among other things, contaminating his food, blowing toxic fumes into his cell, interfering with his mail and access to the courts, destroying video and audio evidence of wrongdoing, and monitoring plaintiff through surveillance devices in his cell. Dkt. No. 4–2 at 1–2. Plaintiff also requests an order directing defendants, among other things, to provide him with adequate medical care (including sending him to Albany Medical Center "for his eye and stomach"). *Id.* Construing plaintiff's first motion for preliminary injunctive relief (Dkt. No. 4) in the light most favorable to him as a pro se litigant, he has failed to substantiate any allegations of irreparable harm with evidence in admissible form or to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor.[18] *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.*, 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypothetical s.").

By his second motion for preliminary injunctive relief (Dkt. No. 35), plaintiff alleges that his sentence has been incorrectly calculated by DOCCS, and requests that the court order an independent investigation "by a master" to "see to it that [plain-

---

18. Moreover, many of the underlying claims have been dismissed.

tiff's] sentence is corrected and properly calculated ... so that [plaintiff] can be released as soon as possible." *Id.* at 4–7. " 'To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint.' " *Candelaria v. Baker,* No. 00–CV–0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted). *See, e.g., Scarbrough v. Evans,* No. 9:09–CV–0850 (NAM/DEP), 2010 WL 1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (motion for preliminary injunction alleging use of excessive force and denial of medical care by non-parties denied where complaint alleged denial of mental health care and proper conditions of confinement); *Lewis v. Johnston,* No. 9:08–CV–0482 (TJM/ATB), 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007). "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel, Inc. v. Trans World Airlines,* 111 F.3d 14, 16 (4th Cir.1997); *accord Ball v. Famiglio,* 396 Fed.Appx. 836, 837 (3d Cir.2010). Here, the allegations that form the basis for plaintiff's second motion for injunctive relief—namely his alleged sentence miscalculation—are not sufficiently related to the claims in the complaint, which relate to his conditions of confinement at Upstate C.F., and the motion must therefore be denied.[19]

For the foregoing reasons, plaintiff's motions for preliminary injunctive relief (Dkt.Nos.4, 35) will be denied in their entirety.

## VI. REQUEST FOR INVESTIGATION

Plaintiff's letter motion (Dkt. No. 38) requesting that "someone come to see [him] and investigate" his claims of food tampering, or in the alternative, that he be brought to court for a hearing on his motions for preliminary injunctive relief will be denied.

## VII. CONCLUSION

Therefore, it is

ORDERED that

1. Mary Banks, Angel Dublin, and Tawanda Starkey are **DISMISSED** as plaintiffs to this action;

2. Plaintiff Edwin Banks' IFP Application (Dkt. No. 18) is **GRANTED.**[20] The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 17) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;

---

**19.** Insofar as plaintiff seeks his immediate or earlier release from prison, his claims are not cognizable in a Section 1983 action. In *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court held that habeas corpus was the appropriate remedy for prisoners challenging the fact or duration of their confinement. *See id.* at 490, 93 S.Ct. 1827; *see also Channer v. Mitchell,* 43 F.3d 786, 787 (2d Cir.1994) (noting that "habeas corpus—not a § 1983 action—provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment ...." (citing *Preiser,* 411 U.S. at 488–90, 93 S.Ct. 1827).)

**20.** Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

3. The Clerk provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office;

4. The following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, or because plaintiff seeks monetary damages from defendants who are immune from such relief: (1) the claims for monetary damages against the defendants in their official capacities; (2) the claim that defendant Pickering denied plaintiff's FOIL requests; (3) the claim that defendants Annucci, Rock, Bellamy, and Woodward improperly handled plaintiff's grievances; and (4) the claim that defendants Annucci; Bellamy; Rock; Woodward; Fonda; Eddy; and John Doe 4, an unidentified DOCCS Lieutenant, failed to properly investigate wrongdoing of DOCCS staff; (5) the claims that defendants Eddy, Marshall, and Sevey verbally harassed and threatened plaintiff; (6) the claim that defendant Gilmore failed to correct alleged food tampering by other staff; (7) the Eighth Amendment medical indifference claims against defendants Fairchild, Lordi, Marinelli, and Madalaywama; (8) the Fourteenth Amendment due process claim against defendant Marshall for taking plaintiff's property; (9) the First Amendment denial of access to the courts claim against defendant Marshall; (10) the Eighth Amendment claims against defendants Rock and Annucci for failure to provide safe ventilation; (11) the interference with family relations claim; (12) all claims against defendants Beilein; Fonda; John

Doe 1, the Union of Officers at Upstate C.F.; and John Doe 2, the Employer/Agent for the medical staff at Upstate C.F.; and (13) the claims that defendants Annucci; Rock; Koenigsmann; and John Doe 3, Deputy Superintendent of Security are liable as supervisors for the alleged wrongdoing of their staff (with the exception of the failure to correct claim against defendant Rock regarding food tampering).[21]

5. Because all claims against them have been dismissed, Anthony Annucci; Thomas Beilein; Sgt. Eddy; Sgt. Gilmore; Fairchild; Lordi; Vijay Kuma Madalaywama; Marinelli; S. Woodward; Karen Bellamy; Carl Koenigsmann; Pickering; Vern Fonda; John Doe 1, the Union of Officers at Upstate C.F.; John Doe 2, the Employer/Agent for the Medical Staff at Upstate C.F.; John Doe 3, Deputy Superintendent of Security; and John Doe 4, Unidentified Lieutenant are **DISMISSED** as defendants in this action;

6. Upon receipt from plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Marshall, Sevey, Hide, Page and Rock. The Clerk shall also forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

7. A response to the remaining allegations in the complaint be filed by defendants Marshall, Sevey, Hide, Page, and

---

**21.** Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also Pucci v. Brown,* 423 Fed.Appx. 77, 78 (2d Cir.2011). Thus, plaintiff will not be permitted to file an amended complaint with regard to these claims.

Rock, or their counsel, as provided for in the Federal Rules of Civil Procedure;[22]

8. The Clerk is directed to amend the caption to read as:

EDWIN BANKS,

Plaintiff,

v.

9:13–CV–1500 (DNH/ATB)

D. ROCK, Superintendent, Upstate Correctional Facility; E. MARSHALL, Correction Officer, Upstate Correctional Facility; M. SEVEY, Correction Officer, Upstate Correctional Facility; B. PAGE, Correction Officer, Upstate Correctional Facility; and HIDE, Correction Officer, Upstate Correctional Facility,

Defendants;

8. Plaintiff's motions for appointment of counsel (Dkt. Nos. 3, 16) are **DENIED;**

10. Plaintiff's motions for preliminary injunctive relief (Dkt. Nos. 4, 35) are **DENIED;**

11. Plaintiff's motion (Dkt. No. 38) requesting an investigation into his conditions of confinement is **DENIED;**

12. All pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper**

certificate of service **will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so will result in the dismissal of this action;** and

13. The Clerk shall serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

---

**22.** Specifically, a responsive pleading is required from (1) defendants Marshall, Sevey, Page, Hide, and Rock with respect to plaintiff's Eighth Amendment food tampering claim; (2) defendants Marshall, Sevey, Page, and Hide with respect to plaintiff's First

Amendment free exercise claim; and (3) defendant Page with respect to plaintiff's First Amendment mail interference claim. All other claims and defendants have been dismissed.